FILED by ___ D.C.
ELECTRONIC
Aug 7 2004
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 00-6024-CR-SEITZ
U.S. MAGISTRATE JUDGE BANDSTRA

UNITED STATES OF AMERICA,
    Plaintiff,

vs.

HENRY HERNANDEZ,   ) **DEFENDANT HERNANDEZ'**
    Defendant.   ) **SENTENCING MEMORANDUM OF LAW**
_____ )

Defendant Henry Hernandez ("HERNANDEZ"), by and through undersigned court-appointed counsel, respectfully submits this Memorandum of Law in support of his objections to the Presentence Investigation Report ("PSI").

### I. Background Of The Case.

HERNANDEZ was arrested on January 21, 2000 in Miami, Florida on a criminal complaint alleging he conspired to possessed with intent to distribute cocaine with Co-defendant Oswaldo Delarosa ("DELAROSA"). Plaintiff United States of America ("Government") had been investigating a shipment of aluminum ingots which arrived from Colombia at Port Everglades, Florida on a container vessel. During an inspection law enforcement agents discovered some of the ingots contained cocaine. Surveillance of a warehouse in Miami, Florida revealed that four individuals, including HERNANDEZ, unloaded pallets containing the shipment of ingots and placed them inside a warehouse. The next day law enforcement agents arrested HERNANDEZ as he was sweeping and washing an area outside the warehouse. Inside, the warehouse, the agents discovered thirty-five kilograms of cocaine.

1

Later that month a grand jury sitting in the Southern District of Florida returned an indictment charging HERNANDEZ and DELAROSA in two counts: a) Count 1 for conspiracy to possess with the intent to distribute cocaine in violation of 21 U.S.C. 841(a)(1) and 846; and b) Count 2 for the substantive offense. The indictment did not allege any particular quantity of cocaine but rather only "a detectable amount of cocaine."

On April 30, 2002, HERNANDEZ was arrested in New York on a state charge and advised about an outstanding federal warrant relating to this case. HERNANDEZ "requested he be brought to the Southern District in order to `clear things up.'" PSI at 15. On March 2, 2004, HERNANDEZ was placed in federal custody. Within a few weeks HERNANDEZ agreed to resolve this case by pleading guilty to Count 2 of the indictment pursuant to a written plea agreement offered by the Government.

The plea agreement sets forth the agreement of the parties on several issues which can be summarized as follows: a) sentence would be imposed in conformity with the Federal Sentencing Guidelines; b) the Government intended to argue HERNANDEZ should receive a two-level upward adjustment for obstruction of justice pursuant to USSG 3C1.1; and c) the Government would recommend a reduction in HERNANDEZ' total offense level of three levels for acceptance of responsibility, pursuant to USSG 3E1.1, but <u>only</u> if the Court rejected the Government's request for an increase for obstruction of justice under USSG 3C1.1.

On May 5, 2004, the Court conducted a change of plea hearing during which it accepted the written plea agreement. A "Statement of Facts" signed by the parties appears to have been filed with the Court at or about the time of the hearing.

2

## II. Background Of The Blakely Limitation On The Sentencing Process.

In <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004), the United States Supreme Court extended the application of <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), to include the sentencing phase of a criminal prosecution. <u>Apprendi</u> established a constitutional rule that any fact which increases the statutory maximum for a defendant's punishment must be charged in the indictment, submitted to the jury, and proved beyond a reasonable doubt.[1] The particular sentencing procedures at issue were those in effect in the State of Washington.

In <u>Blakely</u>, the trial judge enhanced the defendant's punishment because he made a finding the defendant had committed the crime with "deliberate cruelty." <u>Id</u>. at 2635. This permitted an upward departure from the applicable guidelines imprisonment range. The defendant appealed, and the case eventually worked its way through the state appellate courts. The United States Supreme Court granted *certiorari* and handed down its decision on June 24, 2004.

In <u>Blakely</u>, the Supreme Court held that the "statutory maximum for <u>Apprendi</u> purposes is the maximum sentence a judge may impose *solely* on the basis of the facts reflected in the jury verdict or admitted by the defendant." Writing for the majority, Justice Scalia explained that:

> [T]he *relevant* "statutory maximum" is not the maximum sentence a judge may impose *after finding additional facts*, but the maximum he may impose <u>without</u> any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment."...and the judge *exceeds* his proper authority."

<u>Blakely</u>, <u>supra</u>, at 2537 (citation omitted)(emphasis supplied in italics)(emphasis in original where underlined).

In another portion of the <u>Blakely</u> opinion, Justice Scalia observed that "<u>Apprendi</u> carries

---

[1] Proof of the existence of a prior conviction is an exception to this fundamental constitutional requirement.

3

out this design by insuring that the judge's *authority to sentence* derives wholly from the jury's verdict. Without that restriction, the jury would *not exercise the control* that the framers intended." Id. at 2539 (emphasis supplied).

In Blakely, as here, the defendant never went to trial. Thus, Blakely stands in a posture, just as in the instant case, where the defendant pleads guilty and proceeds to sentencing. As Justice Scalia stated in Blakely, "the state is free to seek judicial sentence enhancements so long as the defendant *either stipulates to the relevant facts or consents to judicial fact finding*." Blakely, supra, at 2541 (emphasis supplied).[2]

As Justice Scalia so eloquently opined in Blakely, this decision seeks to avoid the unfairness to criminal defendants where "a defendant, with no warning in either his indictment or plea, would routinely see his maximum potential sentence balloon from as little as five years to as much as life imprisonment." Blakely, supra, at 2542. Justice Scalia pointed out this could happen to a defendant where there is a charge against the him under 21 U.S.C. 841 "based not on facts proved to his peers beyond a reasonable doubt, but on facts extracted after trial from a report compiled by a probation officer who the judge thinks more likely got it right than got it wrong." Id. This is exactly what has happened here in HERNANDEZ' case.

### III. Application Of Blakely To The Facts At The Sentencing Hearing.

The sentencing enhancements recommended by the Probation Office cannot withstand

---

[2] The Blakely Court held it does not matter whether the trial judge's authority to impose an enhanced sentence "depends on finding a specified fact (as in *Apprendi*), one of several specified facts (as in *Ring*), or *any* aggravating fact (as here)..." Id. at 2538 (emphasis in original). Without a jury verdict making such a finding, or a defendant's stipulation to the aggravating fact, an enhanced sentenced is not authorized because it violates fundamental constitutional guarantees.

4

scrutiny under Blakely.  HERNANDEZ pled guilty to an indictment which failed to allege the drug quantity for which HERNANDEZ could be found responsible, nor did it allege he obstructed justice by his flight.  Moreover, in the written plea agreement HERNANDEZ never agreed to any drug quantity as his relevant conduct nor to agree he should be punished for obstruction of justice.[3]  The Government had every opportunity to include those aggravating factors in the plea agreement but failed to do so.  Therefore, a finding that the Base Offense Level ("BOL") should be 34, pursuant to USSG 2D1.1(c)(3), would be unlawful.  This follows because such a conclusion would require this Honorable Court to *adjudicate facts* as to HERNANDEZ' relevant conduct for amount of drugs.  This is absolutely prohibited by Blakely.  Blakely, supra, at 2538.  It also would unlawful for the Court to apply a two-level increase for obstruction of justice, pursuant to USSG 3C1.1, because the Court would have to do *adjudicate facts* about whether HERNANDEZ' conduct amounted to obstruction of justice.[4]

---

[3] The Government may argue that a "Statement of Facts" ("SOF") signed by the parties constitutes a "stipulation" sufficient to avoid Blakely's application.  Nothing could be further from the truth.  Nowhere in the SOF does HERNANDEZ agree his relevant conduct is 35 kilograms of cocaine.  In fact, nowhere does the SOF stipulate that HERNANDEZ is responsible for any amount of cocaine. Nor does HERNANDEZ agree in the SOF to an enhanced sentence for obstruction of justice.  In other words, HERNANDEZ never "waived" any Blakely-protected rights.  To be enforceable, a "waiver" must be a "knowing and intelligent waiver of a known right."  Johnson v. Zerbst, 204 U.S. 458 (1938)(courts indulge in every reasonable presumption against waiver).  The Sentencing Commission itself has addressed this issue.  See USSG 1B1.2(a).  A "stipulation" is not a "stipulation" unless it is contained in a plea agreement.  See, e.g., United States v. Nathan, 188 F.3d 190, 199-201 (3rd Cir. 1999)(error to sentence defendant utilizing more serious fraud guideline because defendant's oral admissions to factual basis did not constitute a "stipulation" within narrow meaning of USSG 1B1.2(a)).

[4] The Government may argue certain facts in this case are "obvious," like HERNANDEZ' flight, and HERNANDEZ should be punished for obstruction of justice as such.  However, that argument would be both disingenuous and dangerous if accepted by this Honorable Court.  Otherwise, the Government would be allowed to take the position in the future that "good cases with a lot of proof" don't need to conform to our long-standing system of jurisprudence.  That

5

Because the indictment does not present drug quantity or enhancement for obstruction of justice, nor do the parties stipulate to these facts in the plea agreement, there remains only the PSI as a "basis" for enhancing HERNANDEZ' sentence above the default Base Offense Level ("BOL") of 12.  However, the PSI is neither an indictment, plea agreement, nor stipulation.  Therefore, the PSI does not amount to any authority whatsoever to justify enhancing HERNANDEZ' sentence above a Total Offense Level ("TOL") of 12.[5]

In light of the above, it respectfully is requested this Honorable Court follow Supreme Court precedent and apply the holdings in Blakely v. Washington, 124 S. Ct. 2531 (2004)[6], and grant HERNANDEZ' objections to the PSI as to any sentencing factor which upwardly adjusts his BOL beyond a level 12.  It also respectfully is requested that the Court grant HERNANDEZ a two-level decrease for acceptance of responsibility under USSG 3E1.1, resulting in a TOL of 10

---

system is one which has stood the test of time and separated us from tyrannies for more than two centuries.  Such an alternate system would dispense with the right of a defendant to be tried by a jury of his peers in "obvious" cases.  In those "obvious" cases, there simply would be summary adjudications by judges, and the Constitution and Bill of Rights would be sent to storage in the archives of the Smithsonian.

[5] In his objections to the PSI, HERNANDEZ demonstrates why a BOL of 12 is proper, why there should be no two-level upward adjustment for obstruction of justice, and why he should be afforded a two-level decrease for acceptance of responsibility.  If the Court granted this two-level decrease, then HERNANDEZ' TOL would be 10 with a guideline imprisonment range of either 15-21, 10-16, or 8-14 months, depending on his Criminal History Category.

[6] In the past few days, the United States Court of Appeals for the Eleventh Circuit implicitly has found Blakely to apply to federal criminal cases.  United States v. Marseille, 2004 WL 1627026 (11th Cir. July 21, 2004)(rejecting any suggestion that after Blakely the Guidelines as a whole are unconstitutional; however, Blakely does not prevent judges from determining the existence of prior convictions which is distinguished from judicial findings about other aggravating factors prohibited by Blakely).

for HERNANDEZ before imposition of sentence.[7]

                                                    Respectfully submitted,

                                      _____/ s /_____
                                      Martin A. Feigenbaum
                                      Florida Bar No. 705144
                                      150 West Flagler Street
                                      Museum Tower 1565
                                      Miami, FL 33130
                                      (305) 372-0946

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by fax and mail this 9th day of August, 2004 to: Marc I. Osborne, AUSA, U.S. Attorney's Office, 99 N.E. 4th Street, Miami, FL( fax 305-536-7213); and Paul E. Czekanski, USPO, U.S. Probation Office, 300 N.E. 1st Avenue, Room 315, Miami, FL 33128 (fax 305-523-5496).

                                            _____/ s /_____

---

[7] The Government may argue that a TOL of 10 with Guideline imprisonment range so far below that indicated in the PSI (262-327 months or 240 months to conform with Apprendi), cannot be justified.  However, since Blakely was decided only six weeks ago, there already have been 141 reported decisions.  Among those decisions, courts have abided by respect for the Rule of Law and applied Blakely with similar results.  See, e.g., United States v. Shamblin, 2004 WL 1468561 (S.D. W. Va. June 30, 2004)(because drug quantity not charged in indictment and either proven beyond a reasonable doubt or admitted by defendant, life sentence had to be vacated; defendant re-sentenced to twelve months imprisonment; "the Guidelines are the law which bind this court in sentencing matters, and to the extent that the Guidelines can be applied in a manner consistent with the Sixth Amendment, the court shall strive to do so.").

8