FILED by ec D.C.

ELECTRONIC

Aug 25 2004

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO 00-6024 CR-SEITZ
(U.S. MAGISTRATE JUDGE BANDSTRA)

| | |
|---|---|
| UNITED STATES OF AMERICA<br>  Plaintiff, | |
| vs. | ) |
| | ) |
| HENRY HERNANDEZ,<br>  Defendant.<br>_____ | ) **DEFENDANT HERNANDEZ' REPLY**<br>) **TO GOVERNMENTS' RESPONSE TO**<br>) **SENTENCING MEMORANDUM**<br>) |

    Defendant Henry Hernandez ("HERNANDEZ"), by and through undersigned court-appointed counsel, respectfully replies to Plaintiff United States of Americas' ("Government") Response to his Sentencing Memorandum ("RESPONSE") and Objections to the Presentence Investigation Report ("PSI"), as follows:

    1. A careful reading of the "Statement of Facts" ("SOF") which served as the factual basis for HERNANDEZ' change of plea to guilty involves only the following material facts agreed to by HERNANDEZ: a) on January 20, 2000 at approximately 6:53 p.m. through approximately 11:00 p.m. HERNANDEZ with others unloaded a total of 18 pallets of aluminum ingots from the container and placed them inside a warehouse; b) the Customs Service had discovered "a white powdery substance" inside one of the ingots on January 19, 2000 (however, it should be noted that no particular description of what exactly was the "white powdery substance" ever was given nor any weight of that substance); c) 8 ingots were removed from the 13th pallet and "moved into the warehouse separately"; d) at approximately 11:45 a.m. on January 21, 2000 DEA agents arrested HERNANDEZ and Co-defendant Oswaldo Delarosa; e) HERNANDEZ stated he was a

1

80/mh

day laborer, hired the day before to help unload the container; and f) at approximately 3:30 p.m., while being transported to the federal detention center in Miami, HERNANDEZ jumped out of the transport vehicle and fled from the vicinity.

2. It <u>must be emphasized</u> that nowhere in the SOF does HERNANDEZ agree he knowingly and wilfully unloaded cocaine or any particular quantity of cocaine. The SOF never identifies the "white powdery substance" nor its weight which the Customs Service discovered at Port Everglades in a single ingot. Moreover, no factual nexus is described between that discovery at the port and the 35 kilograms of cocaine found in the warehouse outside of which HERNANDEZ was arrested a few days later.

3. The SOF does not provide for HERNANDEZ to acknowledge that he agreed to import 35 kilograms of cocaine, or possess with the intent to distribute 35 kilograms of cocaine, discovered by DEA agents as they searched the warehouse. Nowhere does the SOF purport to prove that the 8 ingots removed from the 13th pallet contained any cocaine, and it certainly does not allege any particular quantity of cocaine was related to the ingots.

4. In light of the above, the PSI's assignment of 35 kilograms of cocaine as HERNANDEZ' relevant conduct is not supported by the SOF nor admitted by HERNANDEZ in any other fashion. Rather, it is nothing more than pure speculation on the part of Paul E. Czekanski ("USPO"), the United States Probation Officer who prepared the PSI, who simply makes his own factual findings that HERNANDEZ possessed with the intent to distribute 35 kilograms of cocaine.

5. In its "legal analysis," Plaintiff United States of America's ("Government") argument essentially is "the <u>Blakely</u> Court held that a court may sentence a defendant based on

2

"facts...admitted by the defendant." See RESPONSE at 4.  The Government erroneously states that "HERNANDEZ admitted that he helped import and unload aluminum ingots..."  Nowhere in the SOF is there any stipulation by HERNANDEZ that he helped import these aluminum ingots.  HERNANDEZ did not plea to a conspiracy charge but rather only to substantive drug charge with no quantity of drugs alleged in the charging document.

      6. In light of the foregoing, it would be necessary for the Government, the USPO, or this Honorable Court to engage in fact-finding to conclude that HERNANDEZ has criminal responsibility for 35 kilograms of cocaine.  However, such a fact-finding function is proscribed by Blakely v. Washington, 124 S. Ct. 2531 (2004).

      7. As the proper analysis is conducted by this Honorable Court, it should be noted as well that HERNANDEZ never admitted he unloaded any aluminum ingots which contained cocaine.  It is the Customs Service which "admits" or "stipulates" that the 13th pallet out of a total of 18 contained at least one ingot with a "white powdery substance."  Yet, this substance never is identified, nor a quantity stated, in the SOF as to this single ingot out of a large shipment of that type of industrial product.

      8. The Government argues that "Blakely does not require that a defendant stipulate to particular guidelines calculations, only that those calculations be based on `facts...admitted by the defendant.'" See RESPONSE at 5.  However, as demonstrated above, it is beyond dispute that HERNANDEZ never stipulated to or admitted any facts which would permit the particular guidelines calculation made by the USPO.

      9. It is of no import that HERNANDEZ orally acknowledged to the Court he agreed with the SOF.  The SOF is limited by its precise language.  To expand on that language would be to

engage in the type of judicial fact-finding prohibited by the watershed case of <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004).

  10. The Government attempts to circumvent the above inescapable legal and factual conclusions by using the fall-back argument that <u>Blakely</u> is not applicable to United States Sentencing Guidelines ("Guidelines").  HERNANDEZ does not argue that the Guidelines are nullified by <u>Blakely</u>.  Rather, the Guidelines simply are restricted by fundamental constitutional protections the Supreme Court has recognized in this case of first impression.  In fact, the Supreme Court will hear oral argument when it convenes on October 4, 2004 in <u>United States v. Booker</u>, 375 F.3d 508 (7th Cir. 2004), *cert. granted*, August 2, 2004 (No. 04104), a very cogent decision where the majority opinion was authored by Judge Posner.  In <u>Booker,</u> the Seventh Circuit held that <u>Blakely</u> applies to the Guidelines.

  11. HERNANDEZ submits that to reach any conclusion other than <u>Blakely</u> applies to the Guidelines would lead to a bizarre result.  More specifically, the Court would have to conclude that defendants being sentenced in Washington state should be afforded fundamental federal constitutional protections but defendants in federal courts cannot enjoy those same protections.  It simply defies reason the <u>Blakely</u> Court would reach such an inconsistent result in <u>Booker</u>.[1]

  12. The Government argues against applying <u>Blakely</u> in this case by citing a number of decisions handed down before <u>Blakely</u>.  The reasoning in those cases should be disregarded by this Court because, like <u>Apprendi v. New Jersey</u>, <u>Blakely</u> is a landmark case which announces a new constitutional rule to be applied to criminal jurisprudence.

---

[1] A copy of the <u>Booker</u> decision is not attached, but HERNANDEZ respectfully commends it to the review of this Honorable Court.

4

13. The Government is off the mark when it states that "HERNANDEZ asserts that his admissions do not satisfy <u>Blakely</u> because he did not "agree" or "stipulate" that his relevant conduct encompassed 35 kilograms of cocaine, nor that his offense level should be enhanced for obstruction of justice. But <u>Blakely</u> does not require that a defendant stipulate to particular guidelines calculations, only that those calculations be based on "facts...admitted by the Defendant.'" <u>See</u> RESPONSE at 4-5. The Government goes on to try and distinguish what happened at HERNANDEZ' change of plea to what transpired in <u>Blakely</u>. In fact, there is no difference between the two cases.

14. The "facts admitted in the guilty plea," that is the SOF, simply do not have HERNANDEZ admitting he had anything to do importing or possessing with the intent to distribute 35 kilograms of cocaine. A careful word-by-word inspection of the SOF is necessary to reach this inescapable conclusion. When a person's liberty is at stake, a court should not "take liberties" with the <u>actual</u> language "agreed to" by a defendant. Otherwise, the Court literally will be "taking the liberty" from a defendant prohibited by constitutional rules forbidding such judicial action beyond limits fixed by <u>Blakely</u> and its progeny.

15. The Government's argument at pages 7-8 of its RESPONSE simply do not hold water. Again, the Government attempts to distinguish the Washington state sentencing scheme from the Guidelines. In her dissent, Justice O'Connor was right on target when she opined that the <u>Blakely</u> decision's sweep would encompass the Guidelines. In <u>Booker</u>, Judge Posner carefully reasons why <u>Blakely</u> must be respected in the federal sentencing scheme. To accept the Government's argument in Section II of its RESPONSE would be to ignore Justice Scolia's cogent discussion about constitutional protections developed by our Founding Fathers. These

5

great men were careful to ensure that <u>our new country</u> carved out basic freedoms for persons accused of high crimes and misdemeanors, that is, where individual liberty was at stake.

  16.  In Section III of its RESPONSE, the Government makes the alternative argument that this Court should declare the Guidelines unconstitutional and impose a sentence that mirrors the sentence called for by the USPO in the PSI.  The undersigned attorney would respond as follows.  The undersigned has handled federal criminal cases for many years, and it has been his obligation often to explain to criminal defendants that they must accept punishment for failing to respect the rule of law.  At this point in time, the Supreme Court has defined the outer limits of lawful punishment grounded in the fundamental constitutional protections described in <u>Apprendi</u> and <u>Blakely</u>.  There have been many other landmark cases which also define the rule of law in our great country.  <u>See</u>, <u>e.g.</u>, <u>Gideon v. Wainwright</u>, 372 U.S. 335 (1963)(right to appointed counsel); <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966)(suspect in custody must be advised of certain fundamental constitutional rights).

  17.  It is a sad commentary on our times that respect for the rule of law does not appear to be a two-way street.  In other words, if the Supreme Court decides that fundamental constitutional protections should be expanded in favor of criminal defendants, as opposed to being narrowed, then some would advance the argument the rule of law does not have to be respected.  Presently, the Supreme Court has not declared the Guidelines unconstitutional.  Instead, it has decided that sentencing procedures are subject to restrictions in certain ways.  Therefore, to take the position the Guidelines should be ignored demonstrates nothing less than a lack of respect for our cherished rule of law, our guiding light which has made us the greatest nation on this Earth.

18. Simply because the Government appears unhappy that application of <u>Blakely</u> to HERNANDEZ' particular case will result in a substantially less severe punishment than the Government had anticipated does <u>not</u> justify its encouragement for this Honorable Court disregard <u>Blakely</u> and, consequently, respect for the rule of law.

19. At pages 11-15, Section III, of the RESPONSE, the Government continues to argue for denial of the application of <u>Blakely</u> to the instant case. However, it respectfully is submitted this Honorable Court be bound by the judgment of the highest court of this land which has set down binding precedent applicable to this case. <u>See</u>, <u>e.g.</u>, <u>United States v. Booker</u>, 375 F.3d 508 (7th Cir. 2004)(Posner, J.)(holding Guidelines subject to <u>Blakely</u> limits on sentencing powers of trial court).

20. HERNANDEZ has reviewed Section IV of the RESPONSE, but he fails to see any logic in the Government's reasoning. The Government appears to agree the Court is not able to increase HERNANDEZ' offense level for obstruction of justice because that would require "judicial fact-finding." Yet, the Government takes the position the Court is allowed to find drug quantity despite Justice Scalia's majority opinion in <u>Blakely</u> to the contrary. As Justice Scalia observed in <u>Blakely</u>, about the dangers of the present sentencing framework, "a defendant, with no warning in either his indictment or plea, would routinely see his maximum potential sentence balloon from as little as five years to as much as life imprisonment." <u>Blakely</u>, <u>supra</u>, 124 S. Ct. at 2542. Here, HERNANDEZ simply never agreed to be responsible for the 35 kilograms of cocaine found in the warehouse outside of which he was arrested.

21. Prior to <u>Blakely</u>, the parties could have argued that HERNANDEZ' relevant conduct either involved 35 kilograms or some greater or lesser quantity. <u>Blakely</u> has forever changed that

7

system of adversarial confrontation by making the upper limit of HERNANDEZ' punishment the amount of drug quantity found by a jury of the defendant's peers or, if there were no trial as here, a drug quantity admitted to by a defendant as his own relevant conduct. See HERNANDEZ Sentencing Memorandum at fn 3.

22. The Government is off the mark when it argues at page 16 of its RESPONSE that "the smallest offense level applicable to a defendant sentenced under this guideline is 6..." Level 6 under USSG 2D1.1(17) does not include cocaine powder which is the drug at issue in this case. Rather, the lowest level for cocaine powder is found at 2D1.1(14).

23. In Section V of its RESPONSE, the Government recommends the Court announce alternative sentences. If the Court were to elect this option, it respectfully is submitted that Blakely should be followed. If the Supreme Court were to overrule Blakely after October 4, 2004, then the burden should fall on the Government to appeal the Blakely sentence it disagrees with. However, again, that Blakely will be overruled is an unlikely event.

Respectfully submitted,

___/ s /_____
Martin A. Feigenbaum
Florida Bar No. 705144
150 West Flagler Street
Museum Tower 1565
Miami, FL 33130
Phone: (305) 372-0946
Fax: (305) 372-0947

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by fax and mail this 25th day of August, 2004 to: Marc Osborne, AUSA, 99 N.E. 4th Street, Miami, FL 33132 (fax 305-530-7976); and Paul Czekanski, USPO, U.S. Probation Office, 300 N.E. 1st Avenue, Room 315, Miami, FL 33132 (fax 305-523-5496).

\_\_ / s /_____